**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CARTER LEDYARD & MILBURN LLP,

Plaintiff,

v.

MARIA JOSE CARRASCOSA, JOSE CARRASCOSA CUSI, and VICTORIA CARRASCOSA,

Defendants.

Hon. Garrett E. Brown, Jr.

Civil Action No. 07-3216 (GEB)

**MEMORANDUM OPINION**

**BROWN, Chief Judge:**

This matter comes before the Court upon the motion to grant default judgment (Doc. No. 29) against Defendants Jose Carrascosa Cusi and Victoria Carrascosa filed by Plaintiff Carter Ledyard & Milburn LLP. This Court, *sua sponte*, issued a Letter Order (Doc. No. 36) to show cause why Plaintiff's Complaint should not be dismissed as against these Defendants for lack of personal jurisdiction. For the following reasons, the Court will dismiss Plaintiff's Complaint as against these Defendants for lack of personal jurisdiction.

## I. BACKGROUND

This dispute concerning attorneys' fees for legal services provided by Plaintiff Carter Ledyard & Milburn LLP ("Carter Ledyard"), a New York limited liability partnership, on behalf of Defendant Maria Jose Carrascosa ("Carrascosa"), arises out of an international custody dispute between Carrascosa and her ex-husband. By Order of September 10, 2010 ("September 10

Order"), this Court awarded summary judgement for unpaid legal fees in favor of Carter Ledyard and against Carrascosa in the amount of $405,133.14. The present motion only concerns the legal obligations of her father and her sister, Defendants Jose Carrascosa Cusi ("Cusi") and Victoria Carrascosa (collectively, "Defaulting Defendants"), to pay for such legal services. Both Defaulting Defendants are subjects of Spain, and despite proper service in Spain (*see* Lewis Default Decl. ¶¶ 16–17 & Ex. H), Defaulting Defendants have failed to appear. The Clerk of the Court entered default against Defaulting Defendants on March 3, 2010. Carter Ledyard moved for Default Judgment on July 6, 2010. On September 10, 2010, this Court, *sua sponte*, ordered Carter Ledyard to show cause why Defaulting Defendants should not be dismissed for lack of personal jurisdiction. Carter Ledyard timely responded to the Order on October 1, 2010.

As this Court recognized in its September 10 Order, the basic facts regarding Carter Ledyard's representation of Carrascosa are not disputed. Carter Ledyard provided legal services to Carrascosa in both New York and New Jersey with regard to the following proceedings: (1) an extradition proceeding in the State of New York; (2) a federal habeas corpus petition in the United States District Court, District of New Jersey; (3) an appeal of the New Jersey Appellate Division's custody decision and imposition of sanctions on Carrascosa; (4) a criminal action in Superior Court, Bergen County; (5) applications for emergency relief in the Appellate Division; and (6) a Bergen County Jail administrative proceeding. (Lewis SJ Decl. ¶¶ 3,6.) After obtaining a signed retainer agreement from Carrascosa, and in connection with the legal services subsequently provided, Carter Ledyard claims that it provided Carrascosa and Cusi with statements of account on March 2, 2007, April 18, 2007, and June 20, 2007, detailing the services rendered and the sums advanced by Carter Ledyard. (Am. Compl. ¶¶ 24–25, 37; *see*

Lewis SJ Decl. ¶ 6.)

According to the Amended Complaint, Carter Ledyard claims that Defaulting Defendants both promised that Carrascosa's legal fees would be paid. Carter Ledyard claims that Cusi accepted the statements of account without objection but has refused to pay the requested amounts. (Am. Compl. ¶¶ 13–18, Exs. A–C.) Carter Ledyard maintains that Cusi agreed to pay for Carrascosa's legal representation in two documents: (1) a document, dated November 20, 2006, signed by Cusi; and (2) an email, dated November 27, 2006, from Jose Carrscosa Cusi's attorney reconfirming Cusi's wish to hire Carter Ledyard to represent Carrascosa. (*See* Lewis DJ Decl. Exs. F, G.) Carter Ledyard argues that Cusi breached their contract by refusing to pay the amount requested. With respect to Victoria Carrascosa, Carter Ledyard alleges that she made false representations regarding the payment of Carrascosa's legal fees. Specifically, Carter Ledyard alleges that throughout Carter Ledyard's representation of Carrascosa, Victoria Carrascosa placed regular telephone calls to Alan S. Lewis ("Lewis"), a partner at Carter Ledyard, representing that the government of the Spanish province of Valencia would pay Carrascosa's legal fees. (Am. Compl. ¶ 36.) During one such call, Carter Ledyard alleges that Victoria Carrascosa pointed to the appearance of a delegation of Valencian officials at two of Carrascosa's New Jersey hearings as evidence that the Valencian government intended to pay her sister's legal bills. (Am. Compl. ¶ 37.) Carter Ledyard contends that it relied on the representations of Defaulting Defendants in agreeing to perform legal services for Carrascosa, which resulted in their unpaid performance of legal services on her behalf. (Am. Compl. ¶¶ 25–27, 40–45, 47–49.) Carter Ledyard argues that Defaulting Defendants' correspondence and promises of payment for services that they knew would be substantially performed in New Jersey

establish sufficient contacts to permit the exercise of specific personal jurisdiction. (Pl.'s OTSC Br. at 12.)

In addition to its personal jurisdiction arguments, Carter Ledyard asks this Court to reduce its award of damages to $399,620.64, noting that its initial damages statement contained inadvertent and/or duplicate entries. (*Id.* at 5, n.2.)

## II. PERSONAL JURISDICTION

Under Federal Rule of Civil Procedure 4(e), a federal court has personal jurisdiction over a non-resident to the extent authorized by the state law in which that court sits. *A.V. Imps. v. Col de Fratta, S.p.A.*, 171 F. Supp. 2d 369, 370 (D.N.J. 2001). New Jersey's long-arm statute allows this Court to assert personal jurisdiction over a non-resident defendant to the full extent authorized by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Decker v. Circus Circus Hotel*, 49 F. Supp. 2d 743, 745-46 (D.N.J. 1999) (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992)). The requirements of the Due Process Clause can only be satisfied by a showing that (1) the defendant has certain minimum contacts with the forum, such that (2) the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Verotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150–51 (3d Cir. 1996) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A court may exercise either general or specific personal jurisdiction. Specific jurisdiction is attained when the controversy is related to or "arises out of" a defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Otherwise, if the suit does not arise out of or relate to the defendant's contacts with the forum

state, the Court may exercise general jurisdiction if such contacts with the forum constitute "continuous and systematic general business contacts." *Id.* at 415–16. Minimum contacts exist then only if the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *World-Wide Volkswagen Corp. V. Woodson*, 444 U.S. 286, 297 (1980)).

For specific jurisdiction to exist, the plaintiff must satisfy two requirements. First, "the plaintiff must show that the defendant has constitutionally sufficient 'minimum contacts' with the forum." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (quoting *Burger King*, 471 U.S. at 474). In evaluating minimum contacts, the Court first looks at the relationship between the defendant and the forum, specifically whether the defendant has directed enough activity toward the forum state to reasonably anticipate being haled into court there. *Giangola v. Walt Disney World Co.*, 753 F. Supp. 148, 155 (D.N.J. 1990) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Second, the court must determine whether doing so would comport with "traditional notions of 'fair play and substantial justice.'" *IMO Indus.*, 155 F.3d at 259 (quoting *Int'l Shoe*, 326 U.S. at 316). Where the defendant is in default, plaintiff need only make a prima facie showing of personal jurisdiction. *See Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005) (indicating that plaintiffs "may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain"); *see also Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino*, 960 F.2d 1217, 1223 (3d. Cir. 1992); *Carteret Sav.*, 954 F.2d at 145–46. Because this matter arises in the context of default, the Court presumes all allegations contained in the Amended Complaint to be true, with the exception of allegations concerning damages. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

Carter Ledyard submits that this Court may exercise specific jurisdiction over Defaulting Defendants because its claims arise from and are related to Defaulting Defendants' "New Jersey related activities and purposeful availment of the privilege of conducting activities in New Jersey." (Pl.'s Br. at 12.) Specifically, Carter Ledyard contends that Defaulting Defendants' knowledge that the legal services would be primarily rendered in the State of New Jersey, in addition to a handful of communications between each Defaulting Defendant and Carter Ledyard, is enough to satisfy the minimum contacts requirement and, therefore, establish specific jurisdiction. The Court is not persuaded.

Although a contract may provide a basis for a court to exercise personal jurisdiction over a non-resident defendant, "a contract alone does not 'automatically establish sufficient minimum contacts'" in the forum state.[1] *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Burger King*, 471 U.S. at 478); *see also Mellon Bank*, 960 F.2d at 1223. Courts must also look to other factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are evaluated to determine whether a defendant "purposefully established contacts with the forum." *Grand Entm't Group*, 988 F.2d at 482 (quoting *Burger King*, 471 U.S. at 479). In addition to contracts, courts have recognized that various forms of communications between the parties, including written correspondence and telephone calls, factor into the minimum contacts analysis.

---

[1]For present purposes, this Court need not determine whether Cusi's relationship with Carter Ledyard is more akin to a guaranty of payment than a typical contract for services. The Court notes, however, that a guarantee of payment is a "far less substantial contact than even a contract." *CPS Chemical Co. v. McIntire*, No. 88-3259, 1988 WL 112543 (D.N.J. Oct. 25, 1988); *see also Arkansas Rice Growers v. Alchemy Indus., Inc.*, 797 F.2d 565, 573 (8th Cir. 1986); *Bond Leather Co., Inc. V. Q.T. Shoe Mfg. Co., Inc.*, 764 F.2d 928, 934–35 (1st Cir. 1985).

*Grand Entm't*, 988 F.2d at 482; *see also Carteret Sav. Bank*, 954 F.2d 147–48 (citing *Lebel v. Everglades Marina, Inc.*, 115 N.J. 317, 325 (1989)). More recently, courts have extended this principle to encompass email correspondence. *See, e.g.*, *George Young Co. v. Bury Brothers, Inc.*, 2004 WL 1173129, at *5 (E.D. Pa. Apr. 2, 2004). These cases, naturally, reflect the "inescapable fact of modern commercial life," recognized by the Supreme Court in *Burger King*, "that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." 471 U.S. at 476. In order to account for the technological developments of the modern business world, courts must apply a "highly realistic" lens to personal jurisdiction questions that focuses on the quality of a non-resident's contacts with the forum state as much, if not more so, than the quantity. *See id.* at 479; *Mellon Bank*, 960 F.2d at 1224. Although minimal communications with the forum state will not usually support the exercise of personal jurisdiction, *see IMO Indus.*,155 F.3d at 259 n.3, jurisdiction will lie where the minimal communications establish a "substantial connection" with the forum state, *see Burger King*, 471 U.S. at 476 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)); *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (noting that a single telephone call or letter may, in certain circumstances, satisfy the minimum contacts test).

In support of its contention that Cusi purposefully availed himself of the forum state, Carter Ledyard submits a letter it claims to have received from Cusi and an email it received

from Cusi's attorney.[2] Both documents indicate that Cusi wanted Mr. Lewis to provide legal services to Cusi's daughter, Maria Jose Carrascosa. (*See* Lewis DJ Decl. Exs. F, G.) With regard to Victoria Carrascosa's contacts with New Jersey, Carter Ledyard relies upon Mr. Lewis' Declaration, which states that Victoria Carrascosa made regular telephone calls to him wherein she promised that Spanish government officials would pay her sister's legal fees throughout the course Carter Ledyard's representation of Carrascosa. (*Id.* ¶ 11.) As noted above, courts have recognized that minimal communications with the forum state can support the exercise of jurisdiction. *See, e.g.*, *Rambo v. Am. S. Ins. Co.*, 839 F.2d at 1418. Here, however, Carter Ledyard has failed to show that Defaulting Defendants' limited communications with Mr. Lewis established a connection, let alone a *substantial* connection, with New Jersey. Carter Ledyard is a limited liability partnership in the State of New York. (Am. Compl. ¶ 2.) Carter Ledyard has not alleged that either Defaulting Defendant knowingly directed communications into New Jersey, and this Court may not presume that fact from the fact that Carter Ledyard provided legal services in New Jersey to a family member of Defaulting Defendants. Although email correspondence has an omnipresent quality, in that it can be "received" almost anywhere, Plaintiff points to no authority, and this Court is aware of none, that the sending of a single email message exposes the sender (or in this case, the sender's client) to limitless personal jurisdiction, regardless of the receiving party's usual residence. Plaintiff had the burden to establish a prima facie case of minimum contacts; Plaintiff has not met this burden.

The Court recognizes Carter Ledyard's argument that Defaulting Defendants understood

[2]The activities of a non-resident party's agent factor into the minimum contacts analysis. *Grand Entm't Group*, 988 F.2d at 483.

that the legal services would be rendered in New Jersey. However, presuming for purposes of argument that Defaulting Defendants did knowingly direct communications into New Jersey, their representations of payment for legal services do not establish a substantial relationship with New Jersey. Their purported arrangements to pay for Carrascosa's legal fees did not contemplate Defaulting Defendants *themselves* having any ties with New Jersey, or incurring specific benefits or obligations under New Jersey law. Other than making payments to the New York-based law firm that provided the legal services, the purported agreements did not oblige Defaulting Defendants to do anything. Defaulting Defendants' sole connection with New Jersey was their expectation that legal services would be provided to Carrascosa, a third party, in New Jersey proceedings. Under the facts alleged by Carter Ledyard, it appears that Defaulting Defendants had no control or interest in the relevant forum for the legal services. The forum for Carrascosa's legal proceedings was necessarily determined by the actions of Carrascosa and various law enforcement officials, not Defaulting Defendants. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) ("[T]he mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). If Carrascosa had needed legal services in another state, the Court has every reason to suspect that Defaulting Defendants would have sought to secure legal services for those proceedings, too.[3]

Lastly, Carter Ledyard argues that the more lenient "effects test" endorsed by the

---

[3]Taking Carter Ledyard's argument to its logical conclusion, personal jurisdiction would lie in Pennsylvania if Defaulting Defendants had retained Carter Ledyard for an appeal of Carrascosa's federal habeas petition, so long as the Third Circuit panel heard the case in Philadelphia.

Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), supports the exercise of jurisdiction over Victoria Carrascosa, whom Carter Ledyard alleges committed fraud. This Court disagrees. The *Calder* "effects test" requires the plaintiff to show: "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]" *IMO Indus*., 155 F.3d 265–66. The Third Circuit has stressed, however, that "*Calder* did not change the fact that even in intentional tort cases the jurisdictional inquiry 'focuses on the relations among the defendant, the forum, and the litigation.'" *Id.* at 265 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)). Accordingly, "the *Calder* 'effects test' can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." *IMO Indus.*, 155 F.3d at 265. To demonstrate that a defendant expressly targeted a forum with its tortious activities, a plaintiff typically must show that the defendant made "some type of 'entry' into the forum state." *Id.* (citing *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club*, 34 F.3d 410, 412 (7th Cir.1994)).

Here, Carter Ledyard has not made a prima facie case that Victoria entered the forum state or otherwise expressly directed her alleged fraudulent conduct at the forum state; furthermore, it is unclear that Plaintiff felt the brunt of the tortious conduct in New Jersey. Presuming Plaintiff's allegations to be true, Victoria fraudulently induced Carter Ledyard to perform legal services for her sister related to proceedings in New Jersey and New York by

making regular telephone calls to Mr. Lewis, wherein she promised that the Valencian government would foot the bill. She also pointed to the appearance of Valencian officials at Carrascosa's hearings in New Jersey as proof of that government's intent to pay for her legal services. However, Carter Ledyard does not allege that Victoria directed her telephone calls to a New Jersey resident, and Carter Ledyard does not allege that Victoria sent the Valencian delegation to New Jersey. Furthermore, while one could conclude that Victoria expected the legal services to be performed in large part in New Jersey, the payments were due to a New York law firm, at its New York address, as demonstrated by Carter Ledyard's statements of account. (*See* Am. Compl. Exs. A–C (employing a prominent New York address in the letterhead).)[4] As noted above, the expectation that the legal services would take place in New Jersey were beyond Victoria's control or interest in securing legal services for her sister. Under these circumstances, it appears that Carter Ledyard bore the brunt of the alleged tortious conduct in New York, where it was tricked (the fraudulent telephone calls) and suffered the damages (unpaid legal fees).

Carter Ledyard has presented no authority, and the Court is aware of none, that a non-resident defendant's agreement to pay for services, performed on the behalf of a third party by a non-resident plaintiff, provides a sufficient basis for the exercise of personal jurisdiction over the non-resident defendant in the absence of a *single* direct contact linking the non-resident defendant with the forum state. "[A] contract alone does not automatically establish sufficient minimum contacts in the other party's home forum," much less in a forum state where both parties are considered non-residents. *Grand Entm't*, 988 F.2d at 482 (quoting *Burger King*, 471

---

[4]The Court refers to Carter Ledyard's statements of account only for purposes of demonstrating the forum in which Carter Ledyard anticipated to receive payment for legal services. The Court does not presume that Victoria received these statements of account.

U.S. at 478). Therefore, the Court finds that Carter Ledyard has not made a prima facie showing that Defaulting Defendants had minimum contacts with New Jersey. Consequently, this Court will dismiss the Amended Complaint as against Defaulting Defendants for lack of personal jurisdiction.

## III. REQUEST TO AMEND ORDER

Lastly, the Court considers Carter Ledyard's request to modify the damages awarded by the Court's September 10 Order. Carter Ledyard represents that its initial damages statement contained inadvertent and/or duplicate entries. (Pl.'s OTSC Br. at 5, n.2.) Seeing no objection to the reduction of Carter Ledyard's damages, and for good cause shown, the Court will reduce the damages awarded in the September 10 Order to $399,620.64.

## IV. CONCLUSION

For the aforementioned reasons, the Court will dismiss Carter Ledyard's Amended Complaint as against Defaulting Defendants for lack of personal jurisdiction. This Court will also reduce the damages awarded by the September 10 Order to $399,620.64. An appropriate form of order accompanies this Memorandum Opinion.

Dated: November 1, 2010

/s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.